**STATE, Plaintiff-Appellee, v. HAASE, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22928.   Decided December 7, 1953.

194

Roger A. Zucker, Cleveland, for plaintiff-appellee.

Wilson G. Stapleton, Ulmer, Berne, Laronge, Glickman & Curtis, Jerome N. Curtis, Robert L. Lewis, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law from a judgment entered in the Police Court of the City of Cleveland Heights, Ohio, finding the defendant guilty of a violation of §13044 GC. (Sec. 3773.24 R. C.) The defendant is a part owner of a hardware store located at 2078 S. Taylor Rd., and known as the Barr Hardware Store. On Apr. 5, 1953, which was Sunday, or the first day of the week, an officer of the police department of the City of Cleveland Heights, went to defendant's hardware store and found it open for business with the defendant in charge. One of the State's witnesses testified that defendant told him that the store was open for business seven days a week. The defendant did not take the witness stand in his own defense or by his own testimony dispute any of the material allegations of the affidavit which was filed April 5, 1953, as the basis of this action. The defendant before trial filed a motion to quash, claiming §13044 GC (§3773.24 R. C.), to be unconstitutional and that the affidavit does not state an offense punishable under the laws of Ohio. The motion should have been designated "demurrer," particularly in raising the question of the constitutionality of §13044 GC (§3773.24 R. C.), as provided by §2941.58 R. C. Davis v. State, 32 Oh St 24; State v. Bateman, 7 N. P. 487. The trial court overruled the motion.

Upon trial, the defendant proffered testimony that hardware stores in cities and villages contiguous to the City of Cleveland Heights were open on Sunday and that his opening on Sunday was necessary to meet such competition and that

the following businesses were permitted to operate in the City of Cleveland Heights without being arrested for violating the Sunday closing law. (Sec. 3773.24 R. C.): Drugstores in which items of hardware (such as are for sale in defendant's store) are offered for sale on Sunday; gasoline stations; garages; a radio and television sales and repair shop; real estate offices; shoe store; a store selling garden and lawn equipment, seeds, fertilizers and the like, and other stores of like character all of which evidence was excluded by the court.

The defendant claims the following errors:

1. In overruling motion to quash.

2. In exclusion of evidence of other businesses being operated and allowed to remain open on Sunday (said evidence being proffered by cross-examination of State's witnesses and witnesses offered by the defendant).

3. In excluding the testimony of the arresting officer proffered on cross-examination as to what, in his opinion, was a work of "necessity."

4. In refusing to enter judgment for defendant at the close of all the evidence.

5. In overruling defendant's motion for new trial.

Three questions are presented:—

1. Did the state make out a case without proof that defendant's business was not, as operated by him on Apr 5, 1953, one of "necessity" under the saving clause of the statute?

2. Is the statute constitutional?   (Sec. 3773.24 R. C.)

3. Does the enforcement of the statute unequally, that is, causing defendant's arrest for conducting his hardware business on Sunday, without interfering with others who conduct like businesses on Sunday which are not such as come within the saving clause of the Act, constitute a violation of defendant's constitutional rights under the XIV Amendment of the Constitution of the United States and of Art. I, Sec. 2 of the Constitution of Ohio, guaranteeing to him equal protection under the law?

There is some authority in other States that one or more of the exceptions contained in the saving clause of the Sunday closing law, according to the facts of the case, must be negatived in the complaint and such negative fact established by the State in making out its case.  50 Amer. Juris. 828. But under the law of Ohio, unless such negative averment is necessary as a part of the description of the crime charged, it need not be alleged in the complaint or established by evidence as a part of the State's case.  In Billigheimer v. State, 32 Oh St 435, parag. 2 of syllabus, provides:

"2. A negative averment to the matter of a proviso in a statute, is not requisite in an information, unless the matter of such proviso enters into and becomes a part of the description of the offense, or is a qualification of the language defining or creating it."

See also: **Hirn v. State, 1 Oh St 16; Cheadle v. State, 4 Oh St 477, Becker v. State, 8 Oh St 391, Strenglien v. State, 17 Oh St 453; Moody v. State, 17 Oh St 111, Hall v. State, 58 Oh St 676,** 153 A. L. R. 1277 (parag. 111, "exception not in the enacting clause").

On page 461 of the opinion, in the Strenglien case, supra, the court quoted from 1 Wharton American Crim. Law, Sec. 378, as follows:

"If provisos and exceptions are contained in a distinct clause it is not necessary to state in the indictment that the defendant does not come within the exception or to negative the proviso it contains, 'for all these are matters of defense, which the prosecutor need not anticipate, but which are more properly to come from the prisoner.' "

At the time that this prosecution was commenced, §13044 GC defined the elements of the crime charged against defendant, of keeping his hardware store open on Sunday for the transaction of general business. The exceptions to the statute are contained in separate sections that is, **§13045 GC** and **§13406 GC,** the first of these sections providing for the exception contended for by defendant. So that here not only is the exception contained in a separate clause of the statute, but in a completely separate section. The fact is that in the Revised Code, effective in Ohio as of October 1, 1953, these three sections have been put into a single section (**§3773.24 R. C.**), but in separate paragraphs and the recodification did not change the meaning or interpretation of our statutes.

Under the Bigamy statute, **§13026 GC** (**§2905.43 R. C.**) the exception extended to one whose husband or wife has been absent continuously for five years next preceding the second marriage without being known to such person to be living within that time. The State need not negative such exception in the indictment and a defendant claiming to come within the exception must establish such claim as a defense. Strenglien v. State, supra.

Under the Carrying Concealed Weapons statute, **§12919 GC** (**§2923.01 R. C.**) an exception is provided in **§13448-4 GC** (**§2845.76 R. C.**) that if a prudent person would be justified in carrying a weapon in defense of himself, property or family, under the circumstances, and the defendant was engaged in a lawful business such circumstances shall require a jury to

acquit defendant. The courts have been unanimous in holding that this exception to the carrying concealed weapons charge constituted an affirmative defense and the state has no burden to negative it either in the indictment or on trial of the action. **Porello v. State, 121 Oh St 280; Fink v. State, 40 Oh Ap 431; Hart v. State, 42 Oh Ap 501.**

There is no doubt but that conducting a general hardware business on Sunday does not come within the exception of "necessity" under the saving clause of the statute, any more than would be true of carrying on a general dry-goods business, a millinery business, a bakery business or grocery business, and all businesses of like character. Of course, these businesses are very necessary as a part of our economic and social requirements, but this is not the meaning of the words, "Work of necessity or charity" as used in §3773.24 **R. C.** (§13045 **GC**). People can, by ordinary foresight, provide themselves with whatever goods which to them seem convenient or necessary for their needs on days of the week other than Sunday. To provide against such business transactions on Sunday was the very purpose of the law. Judge Lieghley (formerly of this court), while on the common pleas court of Cuyahoga County, in the case of Straka v. State, 16 N. P. (N. S.) 554, in holding the operation of a bakery on Sunday to be a violation of §§13044 and 13045 GC (§3773.24 **R. C.**) said:

"It is my opinion that 'necessity' as comprehended by this section of the statute, with few exceptions, arises from conditions or circumstances caused by an agency, either in whole or in part, over which man has no control. For instance, it has been held that the distribution of milk upon Sunday is a necessity, in view of the fact that the production of fresh milk is by nature's decree daily and therefore daily distribution of the same is necessary (58 Kans. 328-30). Again, it would doubtless be regarded as a necessity that probably all stores might be open on Sunday, temporarily, following a catastrophe like the Dayton flood, or the Collinwood tragedy. For other instances see authorities cited above."

We are therefore compelled to conclude that the State produced sufficient evidence to make out a case against the defendant under §3773.24 **R. C.**, in opening his hardware store for regular business on Sunday, and if it was the defendant's claim that what he was doing at the time of his arrest, comes within the exception of necessity, such claim would constitute an affirmative defense which the defendant must establish by the greater weight of the evidence. This he did not attempt to do.

The next claim of the defendant challenges the constitutionality of the statutes (§§13044 and 13045 GC, now §3733.24

R. C.). It is the claim of defendant that these sections together with the remaining sections in Chapter 13 "Sabbath Desecration" (which sections must be considered in pari materia) are unconstitutional:—

(a) As an arbitrary exercise of the police power of the State;

(b) In depriving the defendant of his property without due process of law;

(c) That in its enforcement as against him and not others similarly situated, is a denial of the equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States and **Article I, Sec. 2 of the Constitution of the State of Ohio.**

(d) In that the administration and enforcement of the statute renders it a denial of the equal protection of the foregoing constitutional provisions;

(e) That said statutes constitute an unreasonable interference with rights of private properties in violation of **Section 19, Article I of the Constitution of Ohio.**

Secs. 13044, 13045 and 13046 GC provide:

"Sec. 13044 GC: Laboring or requiring employe to labor on Sunday.

"Whoever being over fourteen years of age, engages in common labor or opens or causes to be opened a building or place for transaction of business, or requires a person in his employ or under his control to engage in common labor on Sunday, on complaint made within ten days thereafter, shall be fined twenty-five dollars, and for each subsequent offense, shall be fined not less than fifty dollars, nor more than one hundred dollars, and imprisoned not less than five days nor more than thirty days."

"Sec. 13045 GC: Exceptions:

"The next preceding section shall not apply to work of necessity or charity and does not extend to persons who conscientiously observe the seventh day of the week as the Sabbath, and abstain thereon from doing things herein prohibited on Sunday."

"Sec. 13046 GC: Further Exceptions:

"The provisions of section thirteen thousand and forty-four shall not prevent emigrating families from travelling, watermen from landing their passengers, or keepers of toll-bridges, toll-gates or ferries from attending them on Sunday."

As stated above, these sections have now, by the recodification of the Ohio statutes, been incorporated into §3773.24 **R. C.,** without change in the subject matter. The balance of the sections in Chapter 13 of "Part Fourth; Penal" of the General Code of Ohio titled "Sabbath Desecration" provides

against "sporting, rioting, quarrelling, hunting, fishing, or shooting, participating in exhibitions to the public with or without charge, in a building, room, grounds or garden, a theatrical or dramatic performance or an equestrian or circus performance of jugglers, acrobats, rope dancing, or sparring exhibitions, variety shows, negro minstrelsy, living statuary, ballooning, baseball in the forenoon, exhibition of moving pictures in the forenoon * * *. These provisions permit baseball and moving picture shows in the afternoon on Sunday, trap-shooting in a regular gun or fishing club and conducting regular business on Sunday, if the one claiming the right, by reason of his religious belief, to conduct such business, observes the seventh day of the week as the Sabbath and also permits works of necessity or charity, and does not prohibit emigrating families from travelling, watermen from landing their passengers, or keepers of toll bridges, toll gates or ferries from attending them on Sunday.

It is to be noted that except for attending the means of public travel and engaging in sports (professional baseball being held to be a sport and not business by the United States Supreme Court, in Toolson v. New York Yankees, 98 L. Ed. 20, 1953) or other forms of public entertainment or recreation, the only permissible Sunday business activities are works of necessity or charity. The statutes of Ohio therefore do not permit some businesses to operate on Sunday and deny the same right to others of like character and the decisions holding Sunday closing laws unconstitutional, because they permit some businesses to operate on Sunday and deny the same right to others, are not applicable.

Allen v. Colorado Springs, 101 Col. 498, 75 Pac. 2d, 1490; Henderson v. Antonacci, 62 S. E. 2d, 5 (Fla. 1952).

In the case of Allen v. Colorado Spring, supra, Allen was convicted of operating a grocery store on Sunday in violation of Sunday closing ordinance in which exceptions were made as to some businesses, including within the exceptions a drugstore. The court said, in holding the ordinance unconstitutional: (Syllabus 1) (Syllabus 3)

"A city in exercise of its police power may, by general ordinance prohibit carrying on within its limits of all business or occupations on Sunday, except those of necessity or charity upon ground that thereby the peace, good order, good government and welfare of its inhabitants will be promoted."

"3. An ordinance prohibiting operating of stores on Sunday which excepted drug stores from its restrictions was unconstitutional as discriminatory legislation as applied to a grocer where drug stores admittedly sold certain staple products usually carried by grocery stores."

Many cases are not in accord with the foregoing authorities and hold that where discriminations are contained in an ordinance or law restricting business on Sunday, that the legislative body acted on the facts within its knowledge which justified its classification as reasonable and proper.

These cases are collected in a comphehensive note in 46 A. L. R. 290 (See parag. 11, page 292). The purpose of Sunday closing laws being in the interest of the public welfare, and in support of the religious and devotional life of the community, providing for a day of rest and possibly recreation, must be liberally construed in favor of their validity and as being within the constitutional powers of the legislature. In **Vol. 35 O. Jur., page 349,** the author says in paragraph 9:

"Justified as Exercise of Police Power:

"Laws relating to the observance of Sunday have been uniformly recognized as a legitimate exercise of the police power. These laws, fixing regularly running days of rest from all secular pursuits, are within the power of the legislature to adopt such wholesome regulations as may be necessary to promote the peace, health and well being of society. In fact, the state may, as a police regulation for the promotion of the physical, mental and moral welfare of its citizens, establish as a civil and political institution the first day of the week as a day of rest and prohibit the performance upon it of all labor or business except works of necessity or charity. Accordingly Sunday legislation including both statutes and ordinances, prohibiting common labor, barbering, baseball, hunting, etc., on Sundays, has been upheld."

The constitutionality of Ohio laws passed in the interest of the observance of Sunday as a day of rest, have been upheld by the supreme court in the following cases:

**State v. Powell, 58 Oh St 324.**

**Stanfeal v. State, 78 Oh St 24.**

We conclude, therefore, that §13044 GC (§3773.24 R. C.) is not in conflict with any of the provisions of either the Federal or State Constitutions.

The claim of error in rejecting evidence as to probable violation of the Sunday closing laws by others, who were not prosecuted by the authorities, thereby depriving defendant of equal protection under the law, is not well taken.

From the record and the proffered evidence in this case it is probably so, that many violations of the Sunday closing law are not challenged by the enforcement agencies of the City of Cleveland Heights. It was claimed in argument that the provisions of the law in many respects seem not to fit into the pattern of modern living. It will come as a surprise to many ardent fishermen that the law prohibits them from

enjoying such recreation on Sunday. No one, however, need come to the defense of the need for Sunday closing laws. In proper form they speak the will of the people. They have had a long history of supporting the public will that Sunday should be devoted to rest and religious devotion. Such laws are to be found in the history of legislation almost from the beginning of modern civilization, finding their support no doubt from the Third Commandment, "Remember that thou keep holy the Sabbath Day."

In 83 Corpus Juris Secundum, page 800, paragraph II "Regulation and Enforcement of Sunday Observance" under the heading of "General History" we find the following:

"The observance of Sunday is recognized by constitutions and legislative enactment both federal and state; and Sunday prohibitory laws are said to have a religious or divine origin.

"Sunday legislation is more than fifteen centuries old; it originated in Rome in A. D. 321, when Constantine the Great passed an edict commanding all judges and inhabitants of cities to rest on the venerable day of the Sun. Sunday statutes were passed at an early date in England and 29 Charles II c 7 has been made the basis of similar legislation in many of the states * * *."

It might be said that a greater acceptance by the people of the fundamental purpose of these statutes, would help in solving many of our difficult social problems. Courageous leadership in bringing about a greater understanding of their value would indeed be most beneficial.

But these are matters which come exclusively within the jurisdiction of law enforcing officers, legislative bodies and educational leaders. Courts must impartially interpret the law in cases commenced within their respective jurisdictions The fact that one person is prosecuted and another is not, is a subject with which the court cannot deal.

In the case of Vermont v. Corologos, 143 Atl. 284, the Court, in dealing with this question as a defense, said:

"If so, it was a discrimination in the administration of the law, and not the law itself, and manifestly had no bearing on the question of respondent's guilt or innocence. One offender cannot excuse his conduct by showing that some one else equally guilty has not been prosecuted."

We find no error in excluding such evidence.

For the foregoing reasons, the judgment of the Police Court of the City of Cleveland Heights, finding the defendant herein guilty of violating §13044 GC (§3773.24 R. C.) is affirmed.

Exceptions noted. Order see journal.

HURD, PJ, KOVACHY, J, concur.